Kristin M. PERRY; Sandra B. Stier; Paul T. Katami; Jeffrey J. Zarrillo, Plaintiffs–Appellees,

City and County of San Francisco, Plaintiff–Intervenor–Appellee,

v.

Arnold SCHWARZENEGGER, in his official capacity as Governor of California; Edmund G. Brown, Jr., in his official capacity as Attorney General of California; Mark B. Horton, in his official capacity as Director of the California Department of Public Health & State Registrar of Vital Statistics; Linette Scott, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; Patrick O'Connell, in his official capacity as Clerk–Recorder for the County of Alameda; Dean C. Logan, in his official capacity as Registrar–Recorder/County Clerk for the County of Los Angeles, Defendants,

Dennis Hollingsworth; Gail J. Knight; Martin F. Gutierrez; Mark A. Jansson; ProtectMarriage.com—Yes On 8, A Project of California Renewal, as official proponents of Proposition 8; Hak–Shing William Tam, Defendants–Intervenors,

and

County of Imperial; The Board of Supervisors of the County of Imperial; Isabel Vargas, In her official capacity as Deputy Clerk/Deputy Commissioner of Civil Marriages for the County of Imperial, Movants–Appellants.

Nos. 10–16696, 10–16751.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 2010.

Filed Jan. 4, 2011.

Robert H. Tyler (argued) and Jennifer L. Monk, Advocates for Faith and Freedom, Murrieta, CA, for the movants-appellants.

Theodore B. Olson, Matthew D. McGill, and Amir C. Tayrani, Gibson, Dunn & Crutcher LLP, Washington, D.C., Theodore J. Boutrous, Jr., Christopher D. Dusseault, Ethan D. Dettmer, Theane Evangelis Kapur, and Rebecca Justice Lazarus, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, David Boies (argued), Jeremy M. Goldman, and Theodore H. Uno, Boies, Schiller & Flexner LLP, Armonk, NY, for the plaintiffs-appellees.

John C. Eastman, Anthony T. Caso, and Karen J. Lugo, Orange, CA, for amicus curiae Center for Constitutional Jurisprudence.

Matthew B. McReynolds and Kevin T. Snider, Sacramento, CA, for amicus curiae Pacific Justice Institute.

Michael S. Wald, Stanford Law School, Stanford, CA, Herma Hill Kay, Berkeley School of Law, Berkeley, CA, for amici curiae Professors of Family Law.

David C. Codell, Linda M. Burrow, Albert Giang, and Benjamin A. Au, Caldwell Leslie & Proctor, PC, Los Angeles, CA, for amicus curiae Equality California.

Before: STEPHEN REINHARDT, MICHAEL DALY HAWKINS, and N. RANDY SMITH, Circuit Judges.

## OPINION

PER CURIAM:

The County of Imperial, its Board of Supervisors, and a Deputy Clerk for the County appeal the denial of their motion to intervene in this case concerning the constitutionality under the United States Constitution of Article I, section 7.5 of the California Constitution ("Proposition 8"). Concurrently, they assert their standing to appeal on the merits the district court order holding Proposition 8 to be unconstitutional. We affirm the denial of the intervention motion, although on different grounds from those relied upon by the district court, and correspondingly we dismiss the appeal on the merits for lack of standing. This decision, of course, does not affect the standing or the separate appeal of the official proponents of Proposition 8.

### BACKGROUND

In May 2009, six months after Californians adopted Proposition 8, Plaintiffs brought this action in district court "for declaratory and injunctive relief against the enforcement of Prop. 8." They named as defendants, all in their official capacities, the Governor of the State of California, the Attorney General of the State of California, the Director of the California Department of Public Health (who serves as the State Registrar of Vital Statistics), the Deputy Director of Health Information & Strategic Planning for the California Department of Public Health, the Clerk–Registrar for the County of Alameda, and the Registrar–Recorder/County Clerk for

the County of Los Angeles ("Defendants"). Plaintiffs specifically requested that the court "construe Prop. 8 and enter a declaratory judgment stating that this law and any other California law that bars same-sex marriage violate[s]" the federal Constitution, and that the court "enter a preliminary and a permanent injunction enjoining enforcement or application of Prop. 8 and any other California law that bars same-sex marriage." The Defendants refused to argue in favor of Proposition 8's constitutionality, so the initiative measure's official sponsors ("Proponents") were permitted to intervene to do so. In addition, the City and County of San Francisco was permitted to intervene as a plaintiff.

In December 2009, after San Francisco questioned Proponents' standing, the County of Imperial, its Board of Supervisors and Deputy County Clerk / Deputy Commissioner of Civil Marriages Isabel Vargas[1] (collectively, "the Movants") moved to intervene as defendants "to ensure the opportunity for appellate review" of the district court order, in the event that the court granted Plaintiffs their requested relief. The County alleged an interest in intervention because "[a]ny injunctive relief granted by this Court would directly affect the Clerk's performance of her legal duties and the legal duty of the Board to oversee and supervise County clerks and to ensure that the laws are faithfully executed." Movants explained that "Plaintiffs seek to enjoin all relevant state officials from enforcing Proposition 8 and, ultimately, to require them to issue such orders as may be necessary to ensure that all county clerks across California issue marriage licenses to same-sex couples." Because "the outcome of this action will affect [Imperial's] ability to comply with Proposition 8," Movants argued, "the Clerks' interest in the effective performance of their duties and the threat of an injunction impacting those duties—either from a federal District Court or the California Superior Court seeking to enforce an order from the Attorney General or other state officials—justify intervention."

Nine months later, following a bench trial and post-trial proceedings but before ruling on the intervention motion, the district court held Proposition 8 to be unconstitutional and ordered entry of judgment enjoining its enforcement. *Perry v. Schwarzenegger*, 704 F.Supp.2d. 921, 1003–1004 (N.D.Cal.2010), *appeal pending,* Ninth Cir. No. 10–16696. The court then denied the motion to intervene both as of right and permissively. It determined that neither the County itself nor the Board of Supervisors had any interest in the administration of the state marriage laws, which are a "matter of statewide concern rather than a municipal affair." *Lockyer v. City & County of San Francisco*, 33 Cal.4th 1055, 17 Cal.Rptr.3d 225, 95 P.3d 459, 471 (2004) (internal quotation marks omitted). As to the deputy clerk, the court reasoned that "[c]ounty clerks, although local officers when performing local duties, perform their marriage-related duties 'under the supervision and direction of the State Registrar,'" and that "[c]ounty clerks have no discretion to disregard a legal directive from the existing state defendants, who are bound by the court's judgment regarding the constitutionality of Proposition 8." Consequently the court found that none of the three movants had a significant protectable interest of its own to justify intervention.

As is proper when a putative intervenor wishes to press an appeal on the merits,

---

1. Vargas is also a "Recordable Document Examiner" for the County, but she moved to intervene only in her official capacity as a Deputy Clerk and Deputy Commissioner of Civil Marriages.

Movants filed a notice of appeal from the order denying their motion to intervene, and a protective notice of appeal from the district court's order on the merits of Proposition 8's constitutionality. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the order denying the motion to intervene, and dismiss Movants' appeal on the merits.

## DISCUSSION

### I. Intervention as of Right

■ Under Federal Rule of Civil Procedure 24(a)(2), a district court "must permit anyone to intervene who ... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." We review the application of that Rule de novo. *Prete v. Bradbury*, 438 F.3d 949, 953 (9th Cir. 2006). Specifically, we require that an applicant for intervention make four showings to qualify under this Rule: "(1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir.1998). An applicant's "[f]ailure to satisfy any one of the requirements is fatal to the application, and we need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir.2009). None of the Imperial County movants has demonstrated a "significant protectable interest" at stake in this action, as it was brought by Plaintiffs, and we affirm on that basis alone.

### A. Deputy County Clerk Isabel Vargas

■ Isabel Vargas, a deputy county clerk and deputy commissioner of civil marriages for Imperial County, sought to intervene because "[a]ny injunctive relief granted by [the district court] would directly affect the Clerk's performance of her legal duties." Were Imperial County's elected County Clerk the applicant for intervention, that argument might have merit. A County Clerk is not before us, however, so we need not, and do not, decide now whether a County Clerk would have been permitted to intervene under the circumstances present in this case.

■ Here, we are presented with a deputy clerk, who was appointed by and may be removed by the Clerk. *See* Cal. Gov't Code §§ 24101–24102. California law vests deputies with authority to exercise the powers and perform the duties of their principals. *See* Cal. Gov't Code §§ 7, 1194, 24100. Those powers and duties, however, remain the principals'. "The deputy of a public officer, when exercising the functions or performing the duties cast by law upon such officer, is acting for his principal or the officer himself. The deputy's official acts are always those of the officer. He merely takes the place of the principal in the discharge of duties appertaining to the office." *Sarter v. Siskiyou County*, 42 Cal.App. 530, 183 P. 852, 854 (1919); *see also Hubert v. Mendheim*, 64 Cal. 213, 30 P. 633, 635 (1883). It follows that whatever "significant protectable interest" may exist in those duties and powers is an interest belonging to the principal, not the deputy. Vargas does not claim to appear on behalf of the County Clerk or to represent the Clerk's interests in this litigation. She does not contend that the Clerk authorized her to act in her

place or otherwise to seek to intervene in the lawsuit now before us; nor does she contend that the Clerk approved of or ratified her action. Accordingly, standing alone, Vargas's claimed interest as a deputy clerk in the performance of the Clerk's duties is insufficient for a finding of a "significant protectable interest." [2]

For similar reasons, Vargas's claim that she should have been permitted to intervene because *she* could be bound by the district court's injunction, and her related claim that she has standing to appeal now because she *is* bound, fails. To the extent the injunction may affect local officers in counties beyond Alameda County and Los Angeles County,[3] it would enjoin only other County Clerks from performing their duties as required by state law. While being bound by a judgment may be an "concrete and particularized injury" sufficient to confer standing to appeal, *see W. Watersheds Project v. Kraayenbrink*, 620 F.3d 1187, 1196 (9th Cir.2010), the "injury," if any, would be to the Clerk, not a deputy. As we have explained, Vargas is neither the Clerk nor her authorized representative. She therefore may not rely upon the Clerk's injury to assert her own interest in intervention or standing to appeal.

▉ Vargas claims as an additional "significant protectable interest": the desire to avoid the "legal uncertainty and confusion" as to the applicability of Proposition 8 if the district court order is not reviewed on the merits by an appellate court and thus no binding precedent exists as to its constitutionality. Specifically, Vargas cites a provision of the California Constitution that states that "[a]n administrative agency ... has no power ... to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an *appellate* court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations." Cal. Const. art. III, § 3.5(c) (emphasis added). It seems likely that the reference in the provision is to a *state* appellate court and that it is not intended to deal with decisions of federal district courts. But there could, in any event, be no "confusion" in light of the Supremacy Clause. U.S. Const. art. VI, cl. 2. If a federal district court were to enjoin a County Clerk from enforcing state law, no provision of state law could shield her against the force of that injunction. *Cf. LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1159–1160 (9th Cir.2000) (criticizing an expansive interpretation of Cal. Const. art. III, § 3.5, and explaining, "It is a long-standing principle that a state may not immunize its officials from the requirements of federal law").[4] The Vargas claim therefore fails in this regard as well.

### B. The County of Imperial and the Board of Supervisors

▉ The Board of Supervisors of Imperial County and the County itself also

---

**2.** We therefore affirm the district court on this alternate ground and do not adopt the district court's reasoning, which would apply to County Clerks as well.

**3.** As discussed in footnote two of the concurrently filed certification order in No. 10–16696, the effect of the existing order and injunction on County Clerks in California's other counties is unclear, but we need not resolve this question here.

**4.** In any event, it is an open question of California law whether Article III, section 3.5, addressed to state "administrative agenc[ies]," applies to individual Executive officers. *See Lockyer*, 17 Cal.Rptr.3d 225, 95 P.3d at 473–475. Because, given the Supremacy Clause, Vargas would face no "confusion" even if she were covered by that provision, we need not request that the Supreme Court of California clarify the provision's reach.

claim significant protectable interests warranting intervention. Neither claim is sustainable. First, the Board alleges that it "has ultimate responsibility to ensure that county clerks and their deputies faithfully perform their legal duties, including those relating to marriage." Under California law, however, the Board plays no role with regard to marriage, which is "a matter of 'statewide concern' rather than a 'municipal affair.'" *Lockyer*, 17 Cal.Rptr.3d 225, 95 P.3d at 471. Local elected leaders "may have authority under a local charter to supervise and control the actions of a county clerk or county recorder with regard to other subjects," but they have "no authority to expand or vary the authority of a county clerk or county recorder to grant marriage licenses or register marriage certificates under the governing state statutes...." *Id.* Moreover, the duties of the Supervisors themselves are not directly affected by this litigation, so they lack a significant protectable interest.

Second, the County itself has failed to demonstrate any interest of its own, apart from those claimed by Vargas or the Board of Supervisors. The County alleges "a direct financial interest in assuring that the vote of its residents is defended and ultimately upheld" given its "responsibility to provide social welfare programs for the County's residents" and its "understanding that promoting opposite-sex marriage will benefit the public welfare, and reduce a wide variety of problems including, but not limited to, teenage pregnancy, depression in young adults, incarceration rates, and the inability of parents to be the sole financial providers for their children."

■ We deem this argument waived, because in the district court, the County made no mention of any such interest in the case, and certainly of no financial interest. To the contrary it acknowledged that it "ha[d] no known information rele-

vant to this case" and "d[id] not intend to offer evidence at trial." In any event, the County fails to substantiate its "direct financial interest" with any evidence, such as affidavits of financial officers or county records, and instead asserts that "[t]he precise extent of the county's financial interest is ultimately unknowable and irrelevant." Seeing as the burden is on the movant to demonstrate its interest, and it has made no attempt to do so, we conclude that its newly claimed interest is without merit.

## II. Permissive Intervention

■ Federal courts may permit intervention by litigants who "ha[ve] a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(B). Where a litigant timely presents such an interest in intervention, courts consider a number of factors in deciding whether to permit intervention, including:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir.1977) (footnotes omitted). The district court is given broad discretion to make this determination, *Kootenai Tribe v. Veneman*, 313 F.3d

1094, 1110 (9th Cir.2002), and we find no abuse of discretion here.

■■■ The district court found that "the *Spangler* factors weigh[ed] strongly against" intervention. It based this conclusion first on the fact that Movants had explained that they had no new evidence or arguments to introduce into the case. Second, the court determined that Movants' only expressed interest in the litigation—ensuring appellate review of Plaintiffs' constitutional claims—was one that they could not fulfill because they would lack standing to appeal the judgment in Plaintiffs' favor. In general, an applicant for intervention need not establish Article III standing to intervene. Because the specific interest Movants claimed in the litigation would require them to have standing, however, the court did not abuse its discretion by considering their standing to appeal the merits.

The court did not err in determining that Movants lacked standing to appeal. We held, *supra*, that Movants lacked any "significant protectable interest" that would make them eligible for intervention under Rule 24(a). It necessarily follows that they lack Article III standing to appeal the merits of the constitutional holding below. In light of Movants' stated purpose for seeking intervention, the district court's denial of permissive intervention was therefore not an abuse of discretion.

CONCLUSION

The district court order denying the motion to intervene is AFFIRMED. Movants' appeal of the district court order concerning the constitutionality of Proposition 8 is DISMISSED for lack of standing.

The deadline for filing a petition for panel rehearing or rehearing en banc is hereby EXTENDED until the deadline for such petitions in No. 10–16696, which will be 14 days after an opinion is filed in that appeal. The Clerk is DIRECTED to stay the issuance of the mandate in this case until the mandate issues in No. 10–16696.

**AFFIRMED in part; DISMISSED in part.**

**ORDER**

REINHARDT, Circuit Judge, concurring.

Today we file two orders in the appeals regarding the constitutionality of California's Proposition 8, which provides, "Only marriage between a man and a woman is valid or recognized in California." Put differently, the proposition prohibits same-sex marriage. Marriage between individuals of the same sex is a matter that is highly controversial in this country and in which the American people have a substantial interest. Accordingly, these appeals present a question under the Fourteenth Amendment of the United States Constitution that is of importance to the entire public. Oral argument before this court was viewed on television and the Internet by more people than have ever watched an appellate court proceeding in the history of the Nation,[1] and by innumerable law students across the country.[2]

---

1. *See, e.g.,* Tim Rutten, *Monday's Must–See TV,* L.A. TIMES (Dec. 7, 2010); Ashby Jones, *On the Prop. 8 Arguments and the Cameras-in-the-Court Debate,* WALL STREET J. LAW BLOG (Dec. 7, 2010); Lisa Leff, *Televised Gay Marriage Hearing Draws Wide Audience,* ASSOCIATED PRESS (Dec. 6, 2010).

2. *See, e.g.,* Public Information Office, U.S. Court of Appeals for the Ninth Circuit, Proposition 8 Arguments: Coming to a Law School Near You (Dec. 1, 2010), *available at* http://www.ca9.uscourts.gov/datastore/general/2010/12/01/Prop8_LawSchools.pdf.

Today's two orders involve a procedural question known as "standing." The public may wonder why that issue is of such great importance, and what the significance of our standing decisions is. For that reason, while I agree entirely with our two dispositions, both of which are filed in the names of all three of us who are considering the appeals and both of which represent our unanimous views, I believe it desirable to set forth a few explanatory remarks of my own.

The standing problem arises out of a trend in our judicial system over the past few decades. It is a trend that emphasizes technical rules over deciding cases on the merits, and indeed over the merits themselves. Our system now increasingly raises obstacles such as standing, mootness, ripeness, abstention, and other procedural bars that preclude courts from deciding cases on the merits, and as a result increasingly limits the access of individuals to the courts. Members of the public familiar with cases such as *Brown v. Board of Education* and *Roe v. Wade* might have thought that the constitutionality of Proposition 8 could readily be decided when a legal challenge was made to it in federal court. However, in these times, before we are free to decide such important questions the parties must often overcome difficult procedural barriers. Why Congress and the Supreme Court have required

them to do so is a subject for another day, although I have made my views on the subject clear elsewhere.[3] Here the question is simply whether there is standing.

The standing problem, under current Supreme Court doctrine, affects this case in several ways, all relating to the question of whether there is an intervenor opposed to the district court's decision that has the right to appeal it. Should it be held ultimately that there is no such intervenor, the consequences are unclear, other than that we would be unable to review the district court decision on the merits; what would follow thereafter could conceivably be a matter for future decision by this court. All I can say now is that the issues concerning standing were wholly avoidable in this case.

There can be little doubt that when the Plaintiffs filed this action their purpose was to establish that there was a constitutional right to gay marriage, and to do so by obtaining a decision of the Supreme Court to that effect.[4] Yet, according to what their counsel represented to us at oral argument, the complaint they filed and the injunction they obtained determines only that Proposition 8 may not be enforced in two of California's fifty-eight counties. They next contend that the injunction may not be appealed but that it may be extended to the remaining fifty-six

**3.** *See, e.g.,* Stephen Reinhardt, *Life to Death: Our Constitution and How It Grows,* 44 U.C. DAVIS L. REV. 391 (2010); Stephen Reinhardt, *The Anatomy of an Execution: Fairness vs. Process,* 74 N.Y.U. L. REV. 313 (1999); Stephen Reinhardt, *The Supreme Court, the Death Penalty, and the Harris Case,* 102 YALE L.J. 205 (1992); Stephen Reinhardt, *Limiting Access to the Federal Courts: Round Up the Usual Victims,* 6 WHITTIER L. REV. 967 (1984).

**4.** *See, e.g.,* Margaret Talbot, *A Risky Proposal: Is It Too Soon to Petition the Supreme Court on Gay Marriage,* THE NEW YORKER, Jan. 18, 2010, at 40; Jo Becker, *A Conservative's Road*

to Same–Sex Marriage Advocacy, N.Y. TIMES, Aug. 18, 2009, at A1 ("[B]inders stuffed with briefs, case law and notes ... are filled with arguments Mr. Olson hopes will lead to a Supreme Court decision with the potential to reshape the legal and social landscape along the lines of cases like Brown v. Board of Education and Roe v. Wade: the legalization of same-sex marriage nationwide."); Jesse McKinley, *Bush v. Gore Foes Join to Fight Gay Marriage Ban,* N.Y. TIMES, May 27, 2009, at A1 ("In the end, the two lawyers suggested, the case might take them, again, to the United States Supreme Court.").

counties, upon the filing of a subsequent lawsuit by the Attorney General in state court against the other County Clerks. Whether Plaintiffs are correct or not, it is clear that all of this would have been unnecessary and Plaintiffs could have obtained a statewide injunction had they filed an action against a broader set of defendants, a simple matter of pleading. Why preeminent counsel and the major law firms of which they are a part failed to do that is a matter on which I will not speculate.

Next, the problem of standing would have been eliminated had the Governor or the Attorney General defended the initiative, as is ordinarily their obligation. Because they believed Proposition 8 to be unconstitutional, they did not do so here. Whether their decision not to defend the initiative was proper is a matter of some debate, although I sympathize with their view that in extraordinary circumstances they possess that right. Once again, however, I express no ultimate view on the question.

In any event, had Plaintiffs sued a broader class of defendants, there clearly would have been parties who would have had standing to appeal the district court's decision, and who likely would have done so. Even had they not, it might not have been difficult for those interested in defending the proposition to find an intervenor with standing. Imperial County, one of the counties that voted in favor of Proposition 8, sought to intervene, but for some unknown reason attempted to do so through a deputy clerk who asserted her own rights instead of through the Clerk who might have asserted hers. Again, this was a most puzzling legal decision. While we have not ruled as to whether the Clerk would have had standing, we have held that a deputy clerk does not. There are forty-two counties that voted in favor of Proposition 8. Surely had those seeking an intervenor contacted other of those counties instead of relying on Imperial County they could have found a Clerk who would have presented the issue whether a *Clerk* rather than a deputy has standing.

None of this means that ultimately there is no standing in this case. Because of a United States Supreme Court ruling regarding the availability of standing to proponents of initiatives, *Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997), we have certified to the Supreme Court of California the question of an initiative proponent's authority and interests under California law. Although that matter must be decided by the Supreme Court of California, Proponents advance a strong argument on this point. Thus, in the end, there may well be standing to maintain this appeal, and the important constitutional question before us may, after all, be decided by an appellate court—ours, the Supreme Court, or both—and may apply to California as a whole, instead of by being finally decided by a trial court, or by default, in only two counties or in none. As a result, the technical barriers and the inexplicable manner in which the parties have conducted this litigation may in the end not preclude an orderly review by the federal courts of the critical constitutional question that is of interest to all Americans, and particularly to the millions of Californians who voted for Proposition 8 and the tens of thousands of same-sex couples who wish to marry in that state. In the meantime, while we await further word from the Supreme Court of California, I hope that the American public will have a better understanding of where we stand today in this case, if not why.